**\*NOT FOR PUBLICATON\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL MARINACCIO,<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; NEW JERSEY DISTRICT COURT CLERK, WILLIAM T. WALSH, ET AL.<br><br>       Defendants. | Civil Action No. 21-11167<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

Plaintiff Paul Marinaccio ("Plaintiff"), proceeding *pro se*, filed this suit against Defendant William T. Walsh and John and Jane Doe district court personnel ("Defendants"), alleging that Defendants violated his rights under the U.S. Constitution, the New Jersey constitution, and New Jersey statutes, and Plaintiff further alleged that Defendants committed various torts by denying him access to the Clerk of Court's office in Newark, New Jersey.  Presently before the Court is a Motion to Dismiss filed by the United States, on behalf of itself and Defendant Walsh, arguing that Plaintiff's claims lack subject matter jurisdiction and fail to state a claim upon which relief can be granted.  For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

## I.   FACTUAL BACKGROUND

The relevant facts are derived from Plaintiff's proposed Fourth Amended Complaint.  ECF No. 30-1.[1]  Plaintiff, a New Jersey citizen, does not have a physical address, but maintains a P.O.

---

[1] In addition to opposing Defendant's Motion to Dismiss, Plaintiff also cross-moves to amend the Third Amended Complaint.  *See* ECF No. 30-1.  For the purposes of this Opinion, I will consider

Box in Greenbrook, New Jersey. *Id.* ¶ 1. Defendants are the New Jersey District Court Clerk of Court, William T. Walsh, various Jane and John Doe New Jersey District Court Clerk employees working at the Martin Luther King Building & U.S. Courthouse in Newark, New Jersey ("Newark Courthouse"), and the United States. *Id.* ¶ 2.

Plaintiff alleges that on December 19, 2018, he visited the Newark Courthouse to access documents pertaining to a separate pending matter[2] that he had difficulty accessing elsewhere. *Id.* ¶¶ 1-3. According to Plaintiff, when he arrived at the Clerk's office, unidentified court employees, despite his protestations that he needed to access his case files, abruptly kicked him out of the office, and subsequently closed it. *Id.* ¶ 3. After the office closed, Plaintiff alleges that he was rattled by the incident and hungry, and in his confusion, became trapped in a nearby stairwell for approximately 30 minutes. *Id.* ¶ 5. Plaintiff claims to have eventually found his way out of the stairwell, and that upon exiting, he saw a room where Defendant Walsh and other court employees were having a party and eating food in an open room. *Id.* ¶ 6. Plaintiff states that upon entering the room, the employees "concocted a scheme of conspiring with federal agents to remove me from the building." *Id.* Plaintiff alleges that Federal Marshals arrived on the scene, seized him, and escorted him out of the building. *Id.* Plaintiff alleges that he called the Clerk's office later that day at 2:00 PM, but no one answered the phone. *Id.*

On December 18, 2020, Plaintiff filed a Complaint in New Jersey Superior Court, Essex County, asserting that this incident, alone, violated his rights under the U.S. Constitution, the New

---

the proposed Fourth Amended Complaint to be the operative complaint, and assess the sufficiency of the pleadings of that Complaint. Separately, although Plaintiff's brief describes this proposed Amended Complaint as the "Sixth Amended Complaint," according to the docket, it is the Fourth Amended Complaint, and therefore, the Court will refer to it as such.

[2] *Marinaccio v. East Hanover Police Department*, No. 18-15443 (D.N.J.) ("East Hanover PD Action").

Jersey Constitution, and New Jersey civil rights laws, and that Defendants committed various torts against him.  ECF No. 1-1 at 4-8.  It appears that Plaintiff did not serve this Complaint on Defendants, and instead, filed an Amended Complaint in the Superior Court on January 3, 2021, ECF No. 1-3 at 2-3, and then filed a Second Amended Complaint on February 9, 2021, *Id*.  On behalf of Defendant Walsh, the United States Attorney's Office removed the action to this Court on May 13, 2021.  ECF No. 1.  Shortly thereafter, on May 21, 2021, Plaintiff filed a Third Amended Complaint.  ECF No. 5.  In the Third Amended Complaint, Plaintiff claimed that Defendants, in their professional and personal capacities, violated (1) his First Amendment right of access to court; (2) the New Jersey State Constitution; (3) the New Jersey Civil Rights Act ("NJCRA"); (4) the New Jersey Law Against Discrimination ("NJLAD"); (4) 42 U.S.C. § 1983; and (5) Fed. R. Civ. P. 77.  *Id*. ¶ 8.  Plaintiff further asserted claims against Defendants for (6) interference with his statutory rights against misrepresentation; (7) breach of contract; and (8) breach of duty.  *Id*. For these violations and breaches, Plaintiff requests injunctive relief and monetary damages.

In December 2021, the United States filed a notice to substitute itself for Defendant Walsh with respect to certain claims.  ECF No. 18.  In the notice, the United States, through J. Andrew Ruymann, Chief of the Civil Division of the United States Attorney's Office for the District of New Jersey, certified that Defendant Walsh was acting within the scope of his employment as an employee of the United States of America at the time of the alleged conduct.  ECF No. 18-1, Ruymann Cert. at 1-2.[3]  Accordingly, the United States became the sole Defendant for the claims

---

[3] In 1988, Congress passed the Westfall Act, which made suits "against the United States under the FTCA the exclusive remedy for negligent or wrongful acts by federal employees committed within the scope of employment."  *Lomando v. U.S.*, 667 F.3d 363, 375 (3d Cir. 2011).  To effectuate this policy, federal law states that:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out

under the New Jersey State Constitution, NJCRA, and NJLAD, as well as for claims for misrepresentation, breach of contract, and breach of duty.  ECF No. 18.  The sole claims remaining against Defendant Walsh arising in his individual capacity are those under the First Amendment and § 1983.[4]  Def. Br. at 1.

Following the substitution, the United States, on behalf of itself and Defendant Walsh, filed the present Motion to Dismiss the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF No. 19.  In response, Plaintiff opposes Defendants' Motion to Dismiss, and also cross-moves to file a Fourth Amended Complaint.  ECF No. 30.  The proposed Fourth Amended Complaint is factually similar to the Third Amended Complaint, but adds claims against Defendant Walsh, in his individual capacity, for violations of Plaintiff's purported First Amendment rights to freedom of association and receive and disseminate information, Pl. Opp. Br. at 11-12, and Fourteenth Amendment due process right of "freedom to loiter for innocent purposes," *Id*. at 12.  The proposed Fourth Amended Complaint also includes claims against the United States for intentional infliction of emotional distress and a False Claims Act claim under 31 U.S.C. § 3729.  Fourth Am. Compl. ¶¶ 9-20.  The United States filed a reply brief, arguing that these new claims should be dismissed, and that Plaintiff's claims in his proposed Fourth Amended Complaint should be dismissed as futile.  ECF No. 32.

## II.   <u>LEGAL STANDARD</u>

---

of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

[4] Absent an explicit waiver, sovereign immunity bars claims against an employee of the United States, such as Defendant Walsh, from being sued in his or her official capacity.  *Webb v. Desan*, 250 Fed. App'x 468, 471 (3d Cir. 2007).

### A. Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim when there is no subject matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citations omitted); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). On a facial attack, courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," since the motion contests the sufficiency of the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

On a factual attack, courts may "consider evidence outside the pleadings," such as affidavits, since the motion contests the underlying basis for jurisdiction. *Gould Elecs. Inc.*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) ("[A] factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.") (quotations and citation omitted). In such circumstances, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," *Mortensen*, 549 F.2d at 891, but "must be careful [] not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly[.]" *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J.

2008) (quotations and citation omitted).  The proponent of jurisdiction bears the burden to prove that it exists throughout the litigation.  *Mortensen*, 549 F.2d at 891.

### B.  Rule 12(b)(6)

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations and citations omitted); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]") (quotations and citations omitted).  Thus, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim[.]" *Iqbal*, 556 U.S. at 676.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Third, "[w]hen

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* "This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" indeed, mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Moreover, a plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (citation omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010), cert. denied, 565 U.S. 817 (2011).  Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss

into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### C.  Leave to Amend

Federal Rule of Civil Procedure 15 governs amendments of the pleadings.  Rule 15(a) states that a party may amend her pleading "once as a matter of course . . . before being served with a responsive pleading."  Fed. R. Civ. P. 15(a).  At all other times, "[t]he court should freely give leave when justice so requires."  *Id.*  The decision to grant leave to amend is left within the discretion of the district court.  *United States v. Diversified Environmental Groups, Inc.,* 1990 WL 209326, *1 (E.D. Pa. Dec. 11, 1990) (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518-521 (3d Cir. 1988)).  Courts have a liberal tendency in granting leave to amend, because the pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome." *United States v. Hougham,* 364 U.S. 310, 317 (1960).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,—the leave sought should, as the rules required, be freely given." *Foman v. Davis,* 371 U.S. 178, 182 (1962). However, the Third Circuit has also held that even though "leave should be 'freely given when justice so requires,' Fed. R. Civ. P. 15(a), . . . 'a District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile.'" *Winer Family Trust v. Queen,* 503 F.3d 319, 330-331 (3d Cir. 2007) (quoting *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004)).  "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *In re*

8

*Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal quotations omitted and citation omitted).

### D. *Pro Se* Pleadings

Here, Plaintiff is proceeding *pro se*. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. Atty. Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (internal quotation marks and citation omitted). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[T]here are limits to [the court's] procedural flexibility . . . . [P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

## III.   **DISCUSSION**

First, Defendants argue that this Court should decline to extend *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to Plaintiff's asserted First and Fourteenth Amendment claims against Defendant Walsh in his individual capacity. Second, Defendants assert that Plaintiff's remaining claims against the United States must be dismissed. With respect to Plaintiff's claims under the New Jersey Constitution and New Jersey statutes,

Defendants reason that the United States has not waived sovereign immunity as to these claims. With respect to Plaintiff's tort claims, Defendants contend that these claims are barred by the Federal Tort Claims Act ("FTCA"), because Plaintiff failed to exhaust his administrative remedies as required by the Act.   Defendant also maintains that, among other reasons, Plaintiff may not pursue a False Claims Act action because he is proceeding *pro se*.  Finally, Defendant contends that Plaintiff cannot maintain a claim under Fed. R. Civ. P. 77, because Federal Rules do not create substantive rights.

### A.  Claims Against Walsh

The Fourth Amended Complaint brings *Bivens* claims against Defendant Walsh, asserting that his actions, in his individual capacity, violated the following purported constitutional rights: (1) First Amendment right of access to courts; (2) First Amendment right to freedom of association;[5] (3) First Amendment right to receive and disseminate information; and (4) Fourteenth Amendment right of freedom to loiter for innocent purposes.  Defendant also raises a claim against Defendant Walsh under § 1983.

As an initial matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights.  § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

---

[5] The "right of freedom of association secures 'a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Starnes v. Butler County Court of Common Pleas, 50th Judicial District*, 971 F.3d 416, 431 (3d Cir. 2020).  Notably, the right of access to the courts, which claim Plaintiff brings separately, is merely a right encompassed within the First Amendment right to petition for redress of grievances.  *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) ("the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the Government.") (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984)).  As such, Plaintiff's First Amendment right of access to the courts claim is subsumed under Plaintiff's broader First Amendment freedom of association claim.

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, because Defendant Walsh, a federal actor, was a person acting under the color of *federal* law, not *state* law, Plaintiff's claim under § 1983 fails. *Polsky v. United States*, 844 F.3d 170, 173 (3d Cir. 2016) (*citing Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) ("It is well established that liability under § 1983 will not attach for actions taken under color of federal law.")).

Regarding the *Bivens* claims, *Bivens* "is the federal counterpart to 42 U.S.C. § 1983." *Walker v. Zenk*, 323 Fed. App'x 144, 145 n.1 (3d Cir. 2009) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). In *Bivens*, the Supreme Court implied a private right of action under the Fourth Amendment, 403 U.S. at 389, and "opened the door for courts to exercise their judicial power to fashion [] damages remed[ies] against federal officers for other types of constitutional violations," *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020). Since *Bivens*, the Supreme Court has expanded the *Bivens* remedy to other constitutional violations only twice, once under the Fifth Amendment's due process clause, *Davis v. Passman*, 442 U.S. 228 (1979), and another time under the Eighth Amendment's prohibition against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1986).

In recent years, the Supreme Court has cautioned on the separation of powers when courts expand *Bivens* causes of actions. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (citing *Iqbal*, 556 U.S. at 675). In the Court's view, "Congress is far more competent than the Judiciary to weigh such policy considerations . . . and the Judiciary's authority to do so at all is, at best, uncertain." *Egbert v. Boule*, 142 S.Ct. 1793, 1803 (2022) (internal quotations and citations omitted). As such, now, when courts are "asked to imply a *Bivens* action, 'our watchword is caution,'" *Id*. (quoting *Hernandez v. Mesa*, 140 S.Ct. 735, 742 (2020)), and "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy[,] courts must refrain from creating [it,]" *Id*. (quoting *Ziglar*, 137 S.Ct. at 1858); *Ziglar*, 137 S.Ct. at 1857 (stating that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." (quoting *Iqbal*, 556 U.S. at 675)).

For these reasons, where, like here, a plaintiff seeks a yet-to-be-established *Bivens* remedy, the Court has instructed that "analysis of a proposed *Bivens* claim proceeds in two steps: A court first asks whether the case presents a 'new *Bivens* context'–*i.e.*, is it 'meaningfully different from the three cases in which the Court has implied a damages action[.]'" *Id*. at 1797 (quoting *Ziglar*, 137 U.S. at 1855). A case might meaningfully differ, for example, due to "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; [or] the extent of judicial guidance as to how an officer should respond . . . ." *Ziglar*, 137 S.Ct. at 1859-60.

Second, if a claim does, indeed, arise in a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S.Ct. at 1803 (quoting *Ziglar*, 137 U.S. at 1858). While "there may be many such factors, . . . two are particularly weighty: the existence of an alternative remedial structure and separation-of-

powers principles." *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (citing *Ziglar*, 137 S.Ct. at 1857-58).  Notably, if an alternative remedial structure exists, that "may[,] by itself[,] 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'"  *Id*. (citing *Ziglar*, 137 S.Ct. at 1858).  Other special factors discussed by the Court include, among others, "the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; . . . [and] whether a claim addresses individual conduct or a broader policy question."  *Id*. (*Ziglar*, 137 S.Ct. at 1856-63).  Importantly, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  *Egbert*, 142 S.Ct. at 1803 (quoting *Hernandez*, 140 S.Ct. at 743).

Consequently, first, the Court must determine whether Plaintiff's claims present new *Bivens* contexts. They do.  Specifically, Plaintiff brings claims under the First Amendment right of access to the courts and to receive and disseminate information, as well the Fourteenth Amendment right to loiter for innocent purposes.  At the outset, the Court notes that Plaintiff does not bring claims under the Constitutional Amendments upon which the Supreme Court has already found *Bivens* remedies, *i.e.*, the Fourth, Fifth, or Eighth Amendments.  Plaintiff's claims, which are based on Plaintiff being denied access to the Clerk of Court's Office during particular hours of the day, also bear no factual resemblance to the three *Bivens* claims that the Court has previously approved: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."  *Ziglar*, 137 S.Ct. at 1860 (citing *Bivens*, 403 U.S. 388; *Davis*, 442 U.S. 228; *Carlson*, 446 U.S. 14).  Importantly, as to the First Amendment claims, the Court notes that the "the Supreme Court has never implied a *Bivens* action under any clause of the

First Amendment." *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (citing *Reichle v. Howards*, 556 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.")).[6]   Likewise, and unsurprisingly, the "Supreme Court has [also] never extended *Bivens* to the Fourteenth Amendment[,]" *Ramirez v. City of Trenton*, No. 21-10283, 2022 WL 1284737, at *7 (D.N.J. April 29, 2022), because "[t]he Fourteenth Amendment only applies to actions of the states and not to the federal government[,] *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).  *See Berk v. Hollingsworth*, No. 17-0091, 2020 WL 6867216, at *5 (D.N.J. Nov. 23, 2020) (finding it inappropriate to extend a *Bivens* remedy to a Fourteenth Amendment claim); *Kent v. Tabafunda*, No. 07-4973, 2008 WL 2510723, at *1, n.4 (D.N.J. June 19, 2008) (recognizing that although Plaintiff filed a *Bivens*-like complaint pursuant to the Fourteenth Amendment, the Fourteenth Amendment is not applicable to the facts of the case because defendants are federal, not state actors).  For these reasons, I find that Plaintiff's claims present new *Bivens* contexts.

Proceeding to step two, I find that special factors counsel against finding a *Bivens* remedy for Plaintiff's asserted claims.  First, Plaintiff clearly had alternative remedies available through the basic court system processes, and this alone, is sufficient to not expand *Bivens* remedies.   *See Bistrian*, 912 F.3d at 90 (noting that if an alternative remedial structure exists, that "may[,] by itself[,] limit the power of the Judiciary to infer a new *Bivens* cause of action."); *see also Egbert*, 142 S.Ct. at 1803 (explaining that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy."  (quoting *Hernandez*, 140 S.Ct. at 743)).  Plaintiff's claims stem from being denied entry to the Clerk's office on December

---

[6] In addition, none of Plaintiff's cited cases which supposedly confer these First or Fourteenth Amendment rights involve *Bivens* claims.

19, 2018, while attempting to access unspecified case files from his separate East Hanover PD Action.  Fourth Am. Compl. ¶¶ 1-3.  As Defendants correctly argue, Plaintiff had multiple pragmatic remedies to address this supposed harm.  Def. Br. at 12-13.  Plaintiff could have, for example, called or returned to the Clerk's office on December 20 or 21, 2018.  *Id*. at 13.  If he was seeking documents, Plaintiff could have requested that his adversary mail him the necessary documents.  *Id*.  If Plaintiff went to the Clerk's Office to respond to a motion or other order, Plaintiff could have requested additional time from the Court or opposing counsel.  *Id*.  Furthermore, the East Hanover PD Action was not dismissed until July 14, 2020, almost nineteen months after the alleged incident, and not for any reasons related to Plaintiff not being able to access his files on the date in question.  *Marinaccio v. East Hanover Police Department*, No. 18-15443 (D.N.J. July 14, 2022), ECF No. 61 (granting Defendants' Motion for Summary Judgment).  Regardless of any alleged harm arising out of Plaintiff's inability to access the Clerk's office on December 19, 2018, he appears to have had ample time to remedy it by other reasonable means.

In addition, the "potential cost to the government of recognizing" a cause of action based on such self-remediable harms would significantly burden the court system, "both financially and administratively[.]"  *Bistrian*, 912 F.3d at 90.  The number of potential lawsuits stemming from the simple act of temporarily closing an office for lunch or a holiday party could be substantial, and the "burden and demand of litigation might well prevent [the Clerk's Office] . . . from devoting the time and effort required for the proper discharge of [its] duties."  *Ziglar*, 137 S.Ct. at 1860.  These potential lawsuits would also cause the Judiciary, and in turn, the Federal government, to incur substantial administrative and financial costs defending such suits.  Considering this potentially significant burden to the government, it would be preferable for Congress, rather than the courts, to "'weigh the costs and benefits of allowing [such a] damages action to proceed.'"

*Egbert*, 142 S.Ct. at 1805 (quoting *Ziglar*, 137 U.S. at 1858).  Moreover, I agree with Defendants

that "[c]ourt personnel should not fear personal liability any time the courts shut down . . . or one

of the numerous *pro se* litigants have their filings rejected for an alternative reason."  Def. Br. at

13.  Subjecting judiciary employees to monetary damage suits for temporarily closing an office

has the potential to significantly hamper these employees' day-to-day discretionary activities.

For these reasons, the Court declines to extend *Bivens* remedies to Plaintiff's First

Amendment constitutional claims, and therefore, these claims are dismissed.

### B.  Claims Against the United States

The United States is a Defendant for the following claims: (1) New Jersey Constitution;

(2) NJCRA; (3) NJLAD; (4) misrepresentation; (6) breach of duty; (7) intentional infliction of

emotional distress; (8) False Claims Act; and (9) breach of contract.[7]  I find that this Court lacks

subject matter jurisdiction to decide the first eight claims.  First, the United States has not waived

---

[7] Plaintiff asserts that the U.S. Attorney certification should be rejected because Defendant Walsh was, in fact, acting outside the scope of his employment when he barred Plaintiff entry to the Clerk's Office. For this reason, Plaintiff contends that the United States was not properly substituted as a defendant for these claims, and therefore, the Court should, instead, consider all claims as against Defendant Walsh in his individual capacity.  Pl. Opp. Br. at 41-42.  I disagree. The Third Circuit has determined that a court, without conducting discovery or a hearing, may decide whether a defendant was acting within the scope of employment as a matter of law.  *Schrob v. Catterson*, 967 F.2d 929, 935-36 (3d Cir. 1992).  Where a plaintiff "challenges the propriety of the United States substitution as a Defendant in an FTCA case, the scope of employment certification filed by the Government is *prima facie* evidence that [the federal employee's] conduct occurred within the scope of [his] employment."  *Mendez Vallejo v. United States*, No. 20-12664, 2021 WL 2155380, at *4 (D.N.J. May 27, 2021) (internal quotations omitted).  As such, "[i]t is Plaintiff's burden to come forward with specific facts rebutting" the certification.  *Id.* (citing *Schrob*, 967 F.2d at 935-36).  Here, Plaintiff has provided no facts whatsoever to rebut the certification.  Instead, Plaintiff merely disagrees with the certification's conclusion that, based on the allegations, Defendant Walsh was acting within the scope of his employment.  Plaintiff states that, "Defendants can't deny that they left work and had stopped working when they kicked Plaintiff out of Clerk's Office . . . .  This is a disputed material fact that requires discovery."  Pl. Opp. Br. at 41.  But this is not a disputed fact. Indeed, the U.S. Attorney determined that Defendant Walsh was acting within the scope of his employment assuming such a fact to be true.  Therefore, Plaintiff has failed to raise any specific facts rebutting the certification.

sovereign immunity for claims under the New Jersey Constitution, NJCRA, or NJLAD.  Second, Plaintiff has failed to exhaust his administrative remedies, as required by the FTCA, before bringing his tort claims for misrepresentation, breach of duty, and intentional infliction of emotional distress.  Finally, Plaintiff may not bring a False Claims Act claim because *pro se* litigants may not pursue *qui tam* actions on behalf of the Government.  As to the breach of contract, Plaintiff has failed to state a claim that there was a valid contract between the parties.

### i. Sovereign immunity bars Plaintiff's claims under the New Jersey Constitution, NJCRA, and NJLAD.

It is well-settled "that the United States of America may not be sued without its consent[.]" *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Dalm*, 494 U.S. 596, 608 (1990).  The consent "must be 'unequivocally expressed' in statutory text, and cannot simply be implied."  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)). "Absent a waiver, sovereign immunity shields the Federal Government . . . ." *F.D.I.C.*, 510 U.S. at 475; *see Mierzwa v. U.S.*, 282 Fed. App'x 973, 977 (3d Cir. 2008).  Additionally, sovereign immunity extends to federal employees acting in their official capacity. *Webb*, 250 Fed. App'x at 471.  Importantly, "[s]overeign immunity is jurisdictional in nature," and consequently, if the United States has not waived sovereign immunity, the case must be dismissed for lack of subject matter jurisdiction. *Balice v. United States*, No. 17-13601, 2018 WL 3727384, at *3-4 (D.N.J. Aug. 6, 2018) (quoting *F.D.I.C.*, 510 U.S. at 475).

Plaintiff does not advance, and the Court was unable to find, any Federal statutes which unequivocally waive sovereign immunity for claims under the New Jersey Constitution, NJCRA, or NJLAD.  *See Meehan v. Taylor*, No. 12-4079, 2013 WL 4517943, at *2 n.1 (D.N.J. Aug. 26, 2013) ("Plaintiff's claims arising directly under the New Jersey and United States constitutions

are deficient because Congress has not created a waiver of sovereign immunity for such causes of action."); *Andrews v. United States*, No. 12-2516, 2012 WL 5249977, at *2 (D.N.J. Oct. 24, 2012) (noting that the United States "cannot be liable for the purported violation of rights established under the New Jersey Constitution, as the[y] are similarly immune from such claims."); *Abulkhair v. FBI*, No. 14-5677, 2018 WL 772086, at *2 (D.N.J. Feb. 6, 2018) (dismissing NJLAD claim against the United States).  Accordingly, these claims are dismissed for lack of subject matter jurisdiction.

### ii.  Plaintiff failed to exhaust his administrative remedies under the FTCA.

Regarding Plaintiff's tort claims, Defendant brings a factual attack, arguing that Plaintiff failed to exhaust his administrative remedies as required by the FTCA.  *See Gould Elecs. Inc.*, 220 F.3d at 176 (stating that, on a factual attack, courts may "consider evidence outside the pleadings," such as affidavits, since the motion contests the underlying basis for jurisdiction).  Plaintiff disagrees, and asserts that he, in fact, did exhaust his administrative remedies by mailing a "notice of claim" to Defendants.  I find that Plaintiff has failed to exhaust his administrative remedies under the FTCA, and therefore, Plaintiff's tort claims for misrepresentation, breach of duty, and intentional infliction of emotional distress must be dismissed.

Tort claims against the United States of America are governed by the FTCA.  *See* 28 U.S.C. §§ 1346(b), 2401, 2671, *et seq.*  "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees."  *F.D.I.C.*, 510 U.S. at 475-76 (citing 28 U.S.C. § 1346(b)).  Thus, a claimant may bring an action for money damages against the United States, provided that the claimant has first exhausted administrative remedies by presenting his claim to the appropriate federal agency.  *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993).  A claim has been "presented" when "an

executed Standard Form 95 . . . [is] accompanied by a claim for money damages in a sum certain for injury to or loss of property [or] personal injury . . . ." 28 C.F.R. § 14.2(a). Taken together, this creates a firm obligation on the plaintiff to place a value on the claim and present that value to the agency. *See Tucker v. United States Postal Service*, 676 F.2d 954, 958-59 (3d Cir. 1982). Failure to present a FTCA claim with a sum certain is dispositive, and deprives this Court of subject matter jurisdiction over the tort claim. *White–Squire v. U.S. Postal Service*, 592 F.3d 453, 458 (3d Cir. 2010).

Here, Plaintiff appears to mistake his notification of this suit to Defendants as the proper notification under the FTCA and 28 C.F.R. § 14.2(a). In Plaintiff's certification, he claims that on February 13, 2019, he "served clerks of district court notice of claim ent[titled] notice of claim with a brief description of the defendants' actions of ejecting me, securing the Clerk's Office while the Court was open and playing hooky on 12/19/18." ECF No. 30-1, Pl. Cert. ¶ 10. Plaintiff also includes a photo of a notification from USPS that the notice of claim was delivered to "50 Walnut," which is part of the Newark Courthouse address. *Id.* ¶ 11. Regardless, sending a notice of a lawsuit to Defendants does not qualify as proper presentment of a claim for money damages to a Federal agency under the FTCA. *See* 28 C.F.R. § 14.2(a). Furthermore, the declaration of Tiffany Lewis, a paralegal specialist at the Administrative Office of the United States Courts ("AO"), states that the AO, which acts as the Federal agency head for the purpose of considering FTCA claims, has received no claim or submission from Plaintiff. ECF No. 19-2, Lewis Decl. at 1. As such, Plaintiff has not exhausted his administrative remedies and his tort claims are dismissed.

### iii.  Plaintiff cannot bring a claim under the False Claims Act.

Next, Plaintiff brings a False Claims Act claim, asserting that Defendants Walsh and Court employees were "fraudulently collecting money from the Gov[ernment] for services not provided

during the time they spent 'playing hooky' on 12/19/18." Pl. Opp. Br. at 18.  Furthermore, Plaintiff argues that "[i]t is self evident that defendants not only received federal funds and failed to even so much as be present to do the tasks for which they were hired and being paid, but also that payment of the federal funds was conditioned on the agreement by defendants to show up and perform those tasks." *Id*.  Plaintiff cannot pursue this claim.

"The False Claims Act enables private parties, known as relators, to bring enforcement actions on behalf of the United States to recover funds which were fraudulently obtained, and to share in any resulting damages award." *Downey v. United States*, 816 Fed. App'x 625, 627 (3d Cir. 2020) (citing 28 U.S.C. § 3729, *et seq.*).  A suit filed by a relator is deemed to be brought "for the person and for the United States Government." 31 U.S.C. § 3730(b)(1).  However, "while the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States." *Downey*, 816 Fed. App'x at 627 (quoting *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008)).  In addition, the Third Circuit has held "that an individual proceeding *pro se* may not represent third parties in federal court."  *Ajjahnon v. St. Joseph's University Medical Center*, 840 Fed. App'x 667, 668 (3d Cir. 2020).  "Therefore, a *pro se* litigant may not pursue a *qui tam* action on behalf of the Government." *Id*.; *Downey*, 816 Fed. App'x at 627 (same).

Plaintiff brought the False Claims Act claim because, in his view, Defendants were defrauding the Government by improperly collecting a government salary "for services not provided during the time they spent playing hooky." Pl. Opp. Br. at 18.  But, because Plaintiff is *pro se* and he seeks to bring this claim on behalf of the Government, as opposed to any personal interest, he may not pursue such a claim.  *Downey*, 816 Fed. App'x at 627 ("Downey did not allege that he had a personal interest in the *qui tam* portion of this action; rather, he emphasized that his

goal is to help the federal government eliminate the budget deficit. Accordingly, the District Court properly held that Downey, a *pro se* relator, could not pursue the qui tam action."); *Ajjahnon*, 840 Fed. App'x at 668-69 ("Ajjahnon brought the action to recover on behalf of the government for the defendants' allegedly fraudulent billing practices. As such, the District Court did not err in concluding that Ajjahnon may not maintain this *qui tam* action in her *pro se* capacity as a relator on behalf of the United States.").

### iii. Plaintiff failed to state a claim for breach of contract.

Here, Defendants argue, among other things, that Plaintiff failed to state a claim for breach of contract because, put simply, there is no contract between Plaintiff and Defendants. I agree.

As an initial matter, any supposed contract would not be between private parties, but rather, would be a contract between Plaintiff and the United States. "And when the United States is a party to a contract, federal common law governs that contract." *E.O.H.C. v. Sec'y of United States Dep't of Homeland Sec.*, 950 F.3d 177, 192 (3d Cir. 2020). Under federal common law, a breach of contract claim requires: "(1) the existence of a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by that breach." *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 664, 681 (2018) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

Here, Plaintiff's Fourth Amended Complaint only makes one statement regarding a contract. Under the section "Plaintiff charges," it states, "Violation and interfering with plaintiff's statutory rights protecting him from defendants' bre[a]ch of contract and bre[a]ch of duty." Fourth Am. Compl. ¶ 25. This lone statement clearly is conclusory. Indeed, Plaintiff makes no other statements about any potential contract in his opposition brief, nor can any other part of Plaintiff's submissions be construed as implying the existence of a contract, let alone that such a contract was

breached.  As such, Plaintiff has failed to plead any element of a breach of contract claim, and therefore, Plaintiff has failed to state a claim upon which relief can be granted.

### C. Plaintiff's Motion for Leave to Amend is Denied as Futile

In light of the foregoing analysis, granting leave to amend Plaintiff's Third Amended Complaint would be futile.  *See Winer Family Trust*, 503 F.3d at 330-331 ("[A] District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile.").  "Futility 'means that the complaint, as amended would fail to state a claim upon which relief could be granted."  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011) (quoting *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).  The Court has considered the claims and found that none are viable.  As such, I deny Plaintiff's motion to amend as futile.  Since Plaintiff has already amended his complaint multiple times, I also find that providing Plaintiff any further opportunities to amend would be futile.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants Motion to Dismiss is **GRANTED**.[8]  Plaintiff's motion to amend is **DENIED**.  Plaintiff's Complaint is **DISMISSED**.  An appropriate order shall follow.

---

[8] Plaintiff also claims that Defendants violated Fed. R. Civ. P. 77, which governs the operations of Clerk's offices, by failing to keep the Clerk's office open.  Plaintiff cannot bring a claim under the Federal Rules of Civil Procedure. The Rules Enabling Act states that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b). Accordingly, "[a]s a matter of elemental law, the Federal Rules of Civil Procedure do not create substantive rights which do not otherwise exist."  *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 694 (E.D. Pa. 1973).

Date: July 20, 2022                          <u>/s/ Freda L. Wolfson</u>
                                             Freda L. Wolfson
                                             U.S. Chief District Judge